Curia, per Colcock, J.
This case has been kept under advisement for some months, not because the court entertained any doubt upon the subject, but because a deep interest seemed to have been taken in the *529 case which had led both the counsel and the party into an elaborate discussion of the subject, and on the part of the former, a bold and direct attack upon what he admits has been the long established doctrine on the subject, in the course of this discussion, much learning and research have been displayed. But similar efforts have been repeatedly made in cases, in all their important particulars, like the case before us.
We cannot pretend to be more wise than our predecessors, and we consider ourselves as bound by the authority of decided cases; and more imperiously bound by the principles established from the earliest system of jurisprudence. If we adhere to these, the case can admit of no doubt.
The words of the will under which the complainant claims are, “ I give and bequeath to Elizabeth Conlietle a negro girl named Dinah, the child of Patt, to be to her and the heirs of her body lawfully begotten, forever;* but on failure of issue, to go to the eldest child of my daughter Nancy Connors.” And the complainant sets forth that he intermarried with the said Nancy Connors, who was alive at the time of the making of the will, and the death of the testator.
On the part of the complainant it is contended, first, that it is clear the testator meant, if Elizabeth Conlietle died without issue alive at the time of her death, that Nancy Connors’ eldest child should take, and that the intention of the testator is to prevail against all technical construction. Secondly, as she intended a benefit to a person in esse, it is clear that she did not mean to erect a perpetuity by which she must have been excluded from any benefit, and that such intention should restrict the operation of the generality of the words, “ heirs of her body forever.” Thirdly, that the doctrine, that where an estate tail would be created in a personalty, it shall vest in the first taker, has been built on another doctrine not known to our law, and therefore the first taker ought not to take absolutely, but only a life estate. Fourthly, that as the property was in its nature perishable, the testatrix could never have intended to create a perpetuity.
To this it was replied on the part of the defendant.
First. That the limitation over was too remote, and consequently void, it being after an indefinite failure of issue.
Second. That whatever the testatrix may have intended, she had by her will created a perpetuity.
Third. That it has been uniformly decided that where the words were such as would create an estate tail in real property, that when applied to the property so devised, it should vest absolutely in the first taker.
I shall not observe the order which has been pursued in the course of the argument, for though it may have been the best for that purpose, I do not think it the best *for decision. It is not our duty to say what the law ought to be, or how it could be amended ; but to declare what it is. It is not a difficult task to present strong objections to many of the rules of law, but when we take the whole as a science, it will be found dangerous to lend too ready an ear to plausible objections to particular parts of it. There is no science without *530 its arbitrary rules, for such are all first principles; and that which is so loudly complained of in this case will be found to be based on public policy, which must be permitted at all times to prevail over individual convenience.
The law abhors perpetuities, as having a tendency to tie up property in the hands of particular families, and prevent it from producing those beneficial effects which would result from a free circulation of it. It has therefore declared that where personal property is limited over upon any contingency beyond a life or lives in being and twenty-one years, that such limitation shall be void. And to this effect is the first rule laid down by that admirable writer Fearne, in p. 444 (7th Lond. Edit.) to which has been added, as a useful and valuable introduction to the subject, an extract from Lord IIardwicke’s argument in Wicker v. Mitford. After laying down the rule that whenever an executory devise is limited to take effect after a dying without heirs or without issue subject to no other restriction, the limitation is void j he proceeds, “ when executory devises were first permitted it was foreseen that entails made in that form could not be barred by fines and recoveries. If they were of real estate, the executory devise could not be barred by fine, because the title of the executory devise is not through, or as privy to the immediate taker, but quite independent of him; nor could the executor}’ devisee be affected by a recovery, it being long settled that the recompense which in the supposition of law is the ground of barring the issue in tail and those in remainder and reversion, *dotb not extend to an executory devise. If they were personal estate, whether chattels real or personal, from the nature of the property they could not be the subject of either fine or recovery. Entails by executory devise being thus exempt from any legal mode of barring them, it became necessary to prescribe bounds and limits to this new species of settlement, lest otherwise entails should obtain a longer duration, through the irregular and rarely permitted medium of executory devise, than the law endures where the entail commences in the regular way by creating estates for life and estates tail with remainder over. Hence originated the. rule both in law and equity, that the contingency on which executory devises depend, should be confined to a stated period. And by analogy to the case of strict entails which cannot be protected from fines and recoveries longer than the life of the tenant forIife in possession and the attainment of twenty-one years by the first issue in tail, it was at length settled that the longest period for vesting of an executory devise, should be any’life or lives in being and twenty-one years after; to which may be added a few months more to the case of a posthumous child. Therefore every contingency which is not such that if it ever happens it must necessarily he within the period so described, is too remote for an executory devise. The consequence is that it is not lawful to limit an executory devise on a general and indefinite failure of issue : namely, a failure of issue of the person named whenever it happens, he the time of the event ever so distant. It is equally a consequence of the rule that if the failure of issue is restrained to the death of any’ person or persons actually living, or to a period not beyond a life and lives in being and twenty-one years, (with a few months beyond,) then the contingency *531 is good and the executory devise has its full effect. Perhaps if the doctrine of executory devises were res integra* and now to be settled, it might be thought a sufficient and more just check of them to hold, that they should be good as far as the given period, whether the contingency was too largely and widely expressed or not. But our ancestors have not left usa choice, it having been long a fixed rule, that if the contingency is too remote the executory devise dependent upon it shall not be merely void so far as it exceeds the line prescribed, but shall wholly fail.” I have made this long extract with a view to prevent the necessity of referring to other authorities, as herein is to be found the essence and the origin of the rule.
But in addition to the rule that a limitation over after an indefinite failure of issue is void, is another equally imperative, which operates against the complainant’s claim, that neither a fee conditional at common law nor an estate tail can be created out of a term for years in any personal chattel (except in the instance of annuity.) 1 Bro. 273. Hargrave’s Co. Litt. 20, and Fearne, 345. In referring to Fearne, it will be found that in addition to the case of Stratton v. Payne, 3 Bro. Parl. Ca. 257, he refers to Pelham v. Gregory, 5 Bro. Parl. Ca. 435, and the Duke of Montagu v. Lord Beaulieu, 6 Bro. Parl. Ca. 255. And he succinctly lays down the rule, “that the limitation of personal estate to one in tail vests the whole in him, is proved by many cases,” and refers to those above mentioned. With equal accuracy, but descending more into particulars, this rule is thus expressed by Roper in his treatise on the law of Legacies, 2d edit. p. 393. “ If personal estate be given by testament to A. and the heirs of his body; as such words would create an express estate tail in the freehold lands, if applied to them, so in personal estate, if applied to it, such words will have the effect to vest the absolute interest, because such property cannot be entailed, i. e. the first taker will have the absolute interest in the bequest; and the remainder *or executory limitation to the heirs of the body, and the subsequent limitations, if any, depending upon the failure of them, will be of no effect. It will make no difference in regard to the construction, that the interests or profits only are given to the first taker, and the principle to his heirs.” The cases are all collected by Roper, but I shall refer to only two of those mentioned by Fearne. Seale v. Seale, 1 P. Wms. 290, where one devised that all his money in the government funds should be laid out in the purchase of lands, and settled on his eldest son A. and the heirs male of his body, remainder over in the same manner, the lord chancellor said, that the personal estate, viz: the residue, after what was to be laid out in the purchase of lands, could not be entailed, but the whole vested in the eldest son. So in the case of Butterfield v. Butterfield, 1 Ves. Sen. 133, the testator by his will devised, that £400 should be put on good security for his son T., that he might have the interest of it for his life and for the lawful heirs of his body ; and if it should so happen that he should die without heirs it should go to his (testator’s) youngest son, J. B. Lord IIardwicke decreed, that the whole vested in the first taker, and the limitation over wms too remote. A case which is in point to its very letter.
But it is said, that, notwithstanding these rules of law, the intention of the testator is the polar star by which the judges are to direct *532 their course, and such intention shall ride over all the rules of law. And the words of Lord Hardwicke, in Cowper v. Cowper, 2 P. Wms. 748, are relied on in support of this position. Much has been said on this point, and it must be admitted that much of what has been said has been, to say the least of it, most injudiciously applied. To extract the language of a judge in reference to one law, and apply it to another which is materially different, is to pervert the meaning of judges, and to abuse common sense. Now, Lord *Hardwicke does say, in Cowper v. Cowper, that the intention of the testator must determine the effect of the limitation, especially in wills, where the intent overrules the legal import of the words, be they never so express and determinate. But this language was applied to certain restrictive words, which he said controlled the meaning of the preceding words; and that although, with regard to them, if standing alone, such a rule of law could operate, yet, that such rule of law could not operate to restrain the manifest intention of the testator, expressed by the subsequent words. And in this he was certainly correct. Now, if there were any restrictive words in this will, the complainant would be entitled to the benefit of Lord Hardwicke’s opinion. But Lord Hardwicke never said, that a man, by his will, could create a perpetuity, or limit an estate after an indefinite failure of issue, or create an estate tail in personal property. Lord Hardwicke decided the case of Butterfield v. Butterfield, and if he had thought the language used in Cowper v. Cowper applicable, would no doubt have applied it. There is something so apparently absurd in the idea, that a man, by his will, shall overturn the established doctrines of law, that it does seem to be an unncessary expenditure of time and labor to enter into any refutation of it; and it is saying but little on the subject, to introduce the opinions of judges in particular cases (as has been done in the written argument,) (a) unless the cases themselves bore some analogy to the case before us. If a testator give to one in such words as would create a fee, but immediately after by other words shew that he did not mean to give such estate; although the words might have carried a fee, yet the subsequent words may, and sometimes do, control their *operation; and it is in such cases only, that the expression is applicable, that the intention overrules the law. And I here admit, what has been forcibly urged, that the court will always lay hold of any subsequent restrictive words to carry the intention into effect — in other words, will suffer the intention to prevail, if it be not contrary to law.
If the testator had used any words indicative of an intention that the property should go over at the death of the first taker without heirs, it might so have passed; for then the general words “heirs of her body forever” would have been understood to mean heirs of her body at her death, and not to a perpetual succession. It is contended that this intention is implied from two circumstances, and that it is as sufficient as if it had been expressed. As I do not wish to enter further into the field of controversy on this difficult doctrine of the law than I am compelled to do, I will say nothing about that sort of im *533 plication which is to be considered as equivalent to an express intention, but shew that the two circumstances relied on cannot, and do not, operate to control the generality of the words in the first part of the clause. The first circumstance is, that the property limited is of a perishable nature. But although it is of a perishable nature, it is also of a productive nature, and there .may be an increase which would keep pace with the heirs of the first taker. But suppose the property given had been a man, yet he may have lived for a longer time than a life or lives in being .and twenty-one years.
The second circumstance relied on is, that the limitation i.s to one in esse, and that the testatrix, therefore, meant a present interest, an interest to take place at the deathof the first taker. But the remainder woman may live sixty years, and then the heirs of the first taker might be extinct, and she would then take if the limitation* be supported. So that the limitation to one in esse or the nature of the property do not restrict the operation of the generality of the words “heirs of her body,” so as to bring them within the case of Cowper v. Cowper. But what must be conclusive on the subject is., that the case put in all the books to illustrate the rule, is of a limitation over to one in esse.
I shall conclude the case with a reference to some of our own decisions on the points. The case of Guery v. Vernon, 1 Nott & M'Cord, 69, in which the opinion of the court was delivered by Mr. Justice Che.ves, settles the case before us, and nothing but respect to the parties, and a consideration, that such cases seldom occur, would have led me into any further or other observations than those contained in that case. I have considered the case in reference to the two rules, which are distinct, and they are so expressly stated by Fearne, in page 460 (7th Lond. Edit.,) where he lays it down as the third rule, that an estate tail cannot be created in personal property, and he discusses at length, as connected with the subject of executory estates limited on a failure of heirs or issue. The counsel in his-argument complained .of the rule, as having arisen from the doctrine of estates tail, which he said was never the law here. But he is mistaken in this idea, for the rule-was known to the common law long before the statute dc donls.
The case may have been decided without any reference to it. For whether the estate given by the will to the first taker be given for life, or absolutely, if the bequest is limited over through an indefinite .failure of issue, the consequence is the.same.

Decree affirmed.

 An argument furnished by the complainant himself (Professor Henry) on the force of intention, relying principally on Cowper v. Cowper.